IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HENRY R. SEAWELL, III, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:22-cv-278-TFM-MU |
| ) | |
| COLONIAL LIFE & ACCIDENT INS. CO., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendant's Motion for Summary Judgment (Doc. 50, filed 5/17/24). Plaintiffs timely submitted their response in opposition and Defendant timely replied. *See* Docs. 56, 57. Having considered the motion, response, reply, the evidentiary submissions in support of the motions, oral arguments, and the relevant law, the Court finds the motion is due to be **GRANTED**.

### I.   PARTIES AND JURISDICTION

Plaintiff Henry R. Seawell, III and Kathryn D. Seawell ("Plaintiffs") are citizens of Baldwin County, Alabama. Colonial Life & Accident Insurance Company ("Defendant" or "Colonial") is a corporation organized and existing under the law of the State of South Carolina with its principal place of business in South Carolina – therefore is a citizen of South Carolina. The amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this Court has Subject Matter Jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).[1]

---

[1] Plaintiffs also assert that this Court has diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Whether or not the Court has jurisdiction over this action pursuant to CAFA, it certainly has diversity jurisdiction over the named Plaintiffs' claims, based on the specific allegations that Plaintiffs make in their complaint regarding diversity jurisdiction.

The parties do not contest personal jurisdiction or venue, and the Court finds sufficient support exists for both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this breach of contract action on July 15, 2022, on behalf of themselves and other similarly situated policyholders, seeking money damages and declaratory and injunctive relief concerning the meaning of the pertinent provision in their supplemental cancer insurance policy.  Doc. 1 at 1.  On March 15, 2024, Plaintiffs filed a motion to certify class.  *See* Docs. 43, 44.  Defendants filed a response in opposition to Plaintiffs' motion to certify class.  Doc. 48.  On May 17, 2024, Defendant filed the instant motion for summary judgment.  Doc. 50.  Plaintiffs timely filed their response, and Defendant timely filed its reply.  Docs. 56, 57.  On July 11, 2024, the Court held oral argument on both the instant motion for summary judgment and the motion to certify class.  The motions are both fully briefed and ripe for review.

Plaintiffs purchased a supplemental cancer policy ("Policy") from Colonial beginning in 2002.  Doc. 50 at 2.  The Policy provides benefits for oral chemotherapy drugs.  *Id.*  Plaintiffs argue that the oral chemotherapy provision in the Policy provides a benefit for every day that Mrs. Seawell takes her medication, and that Defendant is in breach of the policy by only paying the benefit for the day that the prescription is filled.  Defendant filed this motion for summary judgment, arguing that Plaintiffs' claim fails as a matter of law because Plaintiffs' proposed interpretation of the Policy is inconsistent with its language.

Mrs. Seawell was diagnosed with metastatic breast cancer in 2016.  *Id.* at 2.  As part of her cancer treatment she takes an oral chemotherapy drug called Ibrance, which she has filled every 28 days.  Doc. 50 at 3.  Each time she has her prescription filled, she submits a claim to Colonial.  *Id.*  Colonial has reimbursed the Plaintiffs $400 each time Mrs. Seawell fills her prescription.  *See* Doc. 1 at 5.  Colonial has been paying Plaintiffs benefits under the policy since 2016.  Doc. 50 at

3. The insurance policy provides that "oral chemotherapy will be limited to the cost of the prescription for the day you have the prescription filled, up to the amount shown in the Schedule Page." Doc. 1 at 5; Doc. 56 at 1. The Schedule Page provides: "the amount charged up to $400/day; oral chemotherapy limited to $1200/month." Doc. 56 at 1.

The crux of this case is the interpretation of this the interpretation of the above oral chemotherapy provision. Plaintiffs argue that "for the day you have the prescription filled" means a payment should be made for each day a pill is taken. Plaintiff asserts that this makes sense in reading the policy with the schedule page, because it has both a daily and a monthly cap. Defendant argues that it means a benefit is paid on the day the prescription is filled, not each day that it is taken.

On July 11, 2024, the Court heard oral arguments on the motion. The parties are not in dispute about the material facts of this case. The only dispute is in regard to the interpretation of the policy.

### III.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). An issue is genuine

if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). For factual issues to be considered genuine, they must have a real basis in the record. *Id.*

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231

(11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

### IV. DISCUSSION AND ANALYSIS

The parties disagree as to the interpretation of the oral chemotherapy benefit in the Policy, and the proper interpretation determines whether Defendant breached the contract. Defendant argues that the policy means what it says, and that Plaintiffs' interpretation of the policy is not supported by its language. *See* Doc. 50 at 7. Plaintiffs counter that Mrs. Seawell is "entitled to multiple daily benefits in a multi-day fill, up to the monthly maximum" as opposed to one daily benefit upon filling her prescription. Doc. 56 at 2. Plaintiffs further argue that the policy is ambiguous, and that under Alabama law, the Court should apply the rule of contra proferentem and construe the ambiguity against the drafter. *Id.* at 4-5. In support of their argument, Plaintiffs point to the fact that Colonial did not define the term "prescription" in their policy and claim that therefore the policy cannot unambiguously mean what Colonial says it means. *See id.* at 6-10.

In a diversity action, Alabama's substantive law governs the interpretation of the contract at issue. *Employers Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002) (Citations omitted); *see also SCI Liquidating Corp. v. Hartford Fire Ins.*, 181 F.3d 1210, 1214 (11th Cir. 1999) (applying Georgia law to contract interpretation in a diversity case).

Under Alabama law, "[a] written agreement is unambiguous and will be enforced (if otherwise enforceable) where the intent of the parties can be fairly and reasonably gleaned from the four corners of the document." *Stacey v. Saunders*, 437 So. 2d 1230, 1234 (Ala. 1983) (quoting *Schmidt v. Ladner Construction Co., Inc.*, 370 So. 2d 970 (Ala. 1979)). "[T]he intent of the contracting parties is discerned from the whole of the contract." *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000) (citing *Loerch v. Nat'l Bank of Commerce of Birmingham*, 624 So. 2d 552, 553 (Ala. 1993)). Unless there is indication the terms are used in a special or technical sense, they will be given their "ordinary, plain, and natural meaning." *Id*. If the terms are unambiguous, then the court will enforce the contract as written. *Id*. If the terms are ambiguous, then the court must use established rules of contract construction. *Id*. (citations omitted). "Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of contra proferentem, any ambiguity must be construed against the drafter of the contract." *Id*. (citation omitted).

"Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Pritchett v. State Farm Mutual Automobile Ins. Co.*, 834 So. 2d 785,791 (Ala. 2002).

While the Court sympathizes with Mrs. Seawell's cancer battle, it can find no ambiguity in the policy language. A plain reading of the policy shows it means what it says—that the oral chemotherapy benefit is limited to the cost of the prescription for the day you have the prescription

filled. Despite Plaintiffs' attempt to find ambiguity, it is clear from reading "prescription" in the context of the sentence that a benefit is paid on the day the prescription is filled and Plaintiffs' proposed interpretation is not one that a person of ordinary intelligence would reasonably give it. *See Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001) ("Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it."). Because the contract is unambiguous, the Court does not reach the application of the principle of *contra proferentum*. It is clear from the language of the contract that that a benefit is paid for the day the prescription is *filled*, not for each day the prescription is *taken*. Thus, Defendant's motion for summary judgment is due to be granted.

## V.   CLASS CERTIFICATION

The law of this Circuit indicates that the Court's analysis on class certification does not end simply because it grants summary judgment in favor of the defendant. *See Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215-16 (11th Cir. 2003) ("[E]ven after finding against the plaintiffs on the merits, the court should have determined whether the class action could be maintained, and whether the plaintiffs could represent that class."). In *Martinez-Mendoza*, the circuit court found that the district court erred by failing to address the class certification issue after granting summary judgment to the defendant on the merits of the named plaintiffs' claims. The circuit court found the district court incorrectly thought that the decision on summary judgment rendered the named plaintiffs unable to represent the class. On remand, the circuit court explained as follows:

> As an appellate court, we are unable to review class certification decisions before they are made. . . . We must therefore remand the case to the district court for further proceedings. As we instructed the district court in *Satterwhite*, the court's first task will be to determine whether a case or controversy exists, as required by Article III, Section 3 of the United States Constitution. If a live controversy exists, the court

> must then determine whether the case is appropriate for class certification. If it is, the court must go on to decide whether any of the named plaintiffs are qualified to serve as class representative and, if not qualified, whether a member of the class is willing and qualified to serve as class representative.

*Id.* at 1216 (citing *Satterwhite v. City of Greenville*, 634 F. 2d 231 (5th Cir. Jan. 1981) (en banc) (plaintiffs capacity to act as a class representative is not ipso facto terminated upon losing on the merits)) (internal citation omitted).

In light of *Martinez-Mendoza*, Plaintiffs are **ORDERED** to submit supplemental briefing to the Court on or before **October 21, 2024**, as to whether they intend to pursue certification and to address whether an actual case or controversy exists between the parties. Defendant is **ORDERED** to respond to Plaintiff's supplemental briefing on or before **October 28, 2024**.

## VI.   CONCLUSION

Based on the foregoing discussion and analysis, Defendant's Motion for Summary Judgment (Doc. 50) is **GRANTED**. The parties are **ORDERED** to submit supplemental briefing as indicated above.

**DONE** and **ORDERED** this 23rd day of September, 2024.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE